## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| DR. GINA WEISBLAT, | |
| Plaintiff, | Case No. 1:22-cv-02064-JPC |
| v. | Judge J. Philip Calabrese |
| JOHN CARROLL UNIVERSITY, | Magistrate Judge Jonathan D. Greenberg |
| Defendant. | |

## DEFENDANT JOHN CARROLL UNIVERSITY'S
## MOTION FOR SUMMARY JUDGMENT

Defendant John Carroll University ("JCU") respectfully moves the Court for summary judgment on Plaintiff Gina Weisblat's ("Weisblat") claim of copyright infringement (Dkt. 2 at First Cause of Action) pursuant to Fed. R. Civ. P. 56. As set forth in more detail in JCU's Memorandum in Support of this Motion and supporting evidence, Weisblat's claims should be dismissed for the following, independent reasons:

- Weisblat's allegedly copyrighted "work" in this lawsuit—a draft 2013 application for AmeriCorps grant funding— lacks the requisite originality to be copyrightable;

- Assuming this work could be copyrighted, Weisblat's prior employer, Northeast Ohio Medical University, must own it under the work-for-hire doctrine;

- Weisblat provided false information to the United States Copyright Office when she applied for registration of the work and lacks the standing to assert this lawsuit;

- JCU has not infringed any purported copyright to the work, as it had rights to not only use that work but, also, the allegedly infringing work, an "AmeriCorps Individualized Goal Plan;"

- JCU's use of any language from the 2013 Application constitutes fair use.

Finally, Weisblat cannot prove damages as a result of JCU's use of *de minimis* language from the Weisblat's alleged work. For all of the above reasons, JCU's Motion for Summary Judgment should be granted.

Dated: _May 22, 2024_____          Respectfully submitted,

                                                                        */s/ Rachel Smoot*
                                                                        Philip R. Bautista (0073272)
                                                                        pbautista@taftlaw.com
                                                                        TAFT STETTINIUS & HOLLISTER LLP
                                                                        200 Public Square, Suite 3500
                                                                        Cleveland, Ohio 44114
                                                                        Phone: (216) 241-2838
                                                                        Fax: (216) 241-3707

                                                                        Rachel A. Smoot (0092296)
                                                                        rsmoot@taftlaw.com
                                                                        TAFT STETTINIUS & HOLLISTER LLP
                                                                        41 S. High Street, Suite 1800
                                                                        Columbus, OH 43215
                                                                        Phone: (614) 221-2838
                                                                        Fax: (614) 221-2007

                                                                        *Attorneys for Defendant,*
                                                                        *John Carroll University*

**CERTIFICATE OF SERVICE**

I certify that JCU filed the foregoing Motion for Summary Judgment and Memorandum in Support electronically, through the Court's electronic filing system. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. I also certify that a true and accurate copy of the foregoing was served upon the following party via electronic mail and U.S. Mail on May 22, 2024:

Dr. Gina Weisblat
2358 Adleigh Drive
Cleveland Heights, OH 44106

*Plaintiff, pro se*

*/s/ Rachel Smoot*
*One of the Attorneys for Defendant,*
*John Carroll University*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

DR. GINA WEISBLAT,

                Plaintiff,

        v.

JOHN CARROLL UNIVERSITY,

                Defendant.

Case No. 1:22-cv-02064-JPC

Judge J. Philip Calabrese

Magistrate Judge Jonathan D. Greenberg

**MEMORANDUM IN SUPPORT OF DEFENDANT JOHN CARROLL UNIVERSITY'S**
**MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................... **ERROR! BOOKMARK NOT DEFINED.**

INTRODUCTION ................................................................................................ 1

FACTS ............................................................................................................... 2

    I.      Grant funds from AmeriCorps are at the center of this lawsuit. ........................... 2

    II.     Weisblat claims that she owns rights to the "HPAC" program concept. .............. 3

    III.   JCU applies for AmeriCorps funding in 2019. ..................................................... 4

    IV.   Weisblat's volunteer position ends with JCU in November 2020. ....................... 5

    V.    Weisblat initiates litigation against JCU, which arises from and relates to the same facts as this lawsuit. .................................................................. 5

    VI.   Weisblat erroneously claims ownership over the 2013 Application. ................... 5

    VII.  Weisblat re-files her lawsuit as a purported copyright infringement case. ........... 6

LAW AND ARGUMENT ..................................................................................... 8

    I.      Summary judgment standard. ......................................................................... 8

    II.     As a threshold matter, the *de minimis* language used from the 2013 Registration is not copyrightable. ........................................................... 9

    III.   NEOMED is the owner of any copyright to the 2013 Application under the work-for-hire doctrine. ................................................................... 10

    IV.   Weisblat does not have standing to file this lawsuit as the Registration is invalid. ....................................................................................... 11

    V.    JCU has the right to use language in the 2013 Application. ............................... 12

           A.    AmeriCorps authorized JCU to use language in the 2013 Application. .......................................................................... 13

           B.    Weisblat impliedly licensed use of the 2013 Application to JCU. .......... 13

           C.    JCU owns copyright to the IGP as a co-author and had the right to use it. ....................................................................................... 14

    VI.   JCU's *de minimis* use constitutes fair use. ........................................................ 15

           A.    The *purpose and character* of JCU's use favors a fair use finding. ........ 16

           B.    The "nature" of the copyrighted work favors a fair use finding. .............. 17

            C.    The "amount and substantiality of the portion used in relation to the copyrighted work as a whole" also favors a fair use finding. ........... 18

           D.    The "effect of the use" favors a fair use finding. .................................... 19

    VII.  Weisblat Cannot Prove Damages as a Matter of Law. ....................................... 20

CONCLUSION .................................................................................................. 22

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Geophysical Union v. Texaco Inc.*,
  60 F.3d 913, 927-28 (2d Cir. 1994) ...................................................19

*Arica Inst., Inc. v. Palmer*,
  970 F.2d 1067 (2d Cir. 1992)...........................................................10

*ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*,
  402 F.3d 700 (6th Cir. 2005) ..........................................................10

*Baisden v. I'm Ready Prods., Inc.*,
  693 F.3d 491 (5th Cir. 2012) ..........................................................14

*Bell v. Worthington City Sch. Dist.*,
  No. 2:18-CV-961, 2020 WL 2905803 (S.D. Ohio June 2, 2020)
  ..............................................................................15, 16, 17, 18

*Berg v. Symons*,
  393 F.Supp.2d 525 (S.D. Texas 2005)..................................................14

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
  902 F.2d 829 (11th Cir. 1990) ........................................................21

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 579 (1994).....................................................15, 16, 17, 18

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)......................................................................8

*Cmty. for Creative Non–Violence v. Reid*,
  490 U.S. 730 (1989)....................................................................11

*Consumers Union of U.S., Inc. v. Gen. Signal Corp.*,
  724 F.2d 1044 (2d Cir.1983), cert. denied ...........................................19

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
  499 U.S. 340 (1991)..................................................................9, 11

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
  586 U.S. 296 (2019)..................................................................1, 12

*Gates Rubber Co. v. Bando Chem. Indus., Ltd.*,
  9 F.3d 823 (10th Cir. 1993) ...........................................................9

*Gilleland v. Schanhals,*
   55 Fed. App'x 257 (6th Cir. 2003) ...................................................................11

*Google LLC v. Oracle Am., Inc.,*
   141 S. Ct. 1183 (2021) .........................................................................16, 17

*Harper & Row, Publishers, Inc. v. Nation Enters.,*
   471 U.S. 539 (1985)..................................................................................18

*Hayden v. 2K Games, Inc.,*
   1:17CV2635, 2022 WL 3585655 (N.D. Ohio Aug. 22, 2022) ..............................21

*Hayden v. 2K Games, Inc.,*
   629 F.Supp.3d 736 (N.D. Ohio 2022)....................................................9, 13, 14

*Higgins v. Detroit Educ. Television Found.,*
   4 F. Supp. 2d 701 (E.D. Mich. 1998)................................................16, 17, 18

*Hiller, LLC v. Success Grp. Int'l Learning All., LLC,*
   976 F.3d 620 (6th Cir. 2020) ........................................................................9

*Int'l News Serv. v. Associated Press,*
   248 U.S. 215 (1918)....................................................................................9

*Keane Dealer Servs., Inc. v. Harts,*
   968 F.Supp. 944 (S.D.N.Y. 1997) ................................................................14

*Kohus v. Mariol,*
   328 F.3d 848 (6th Cir. 2003) ........................................................................9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
   387 F.3d 522 (6th Cir.2004) .......................................................................10

*Miller v. Universal City Studios, Inc.,*
   650 F.2d 1365 (5th Cir. 1981) ....................................................................10

*Nat'l Rifle Ass'n of Am. ("NRA") v. Handgun Control Fed'n of Ohio,*
   15 F.3d 559 (6th Cir. 1994) ............................................................17, 18, 19

*Pelt v. CBS, Inc.,*
   No. CV-92-6532 LGB (SHx), 1993 WL 659605 (C.D. Cal. Oct. 25, 1993)...........10

*Perfect 10, Inc. v. Amazon.com, Inc.,*
   508 F.3d 1146 (9th Cir. 2007) ........................................................16, 18, 19

*Princeton Univ. Press v. Mich. Document Servs.,*
   99 F.3d 1384 (6th Cir. 1996) ......................................................................15

*Reed v. Freebird Film Prods., Inc.*,
  664 F.Supp.2d 840 (N.D. Ohio 2009) ................................................................8

*RPM Mgmt., Inc. v. Apple*,
  943 F.Supp. 837 (S.D. Ohio 1996) ...................................................................21

*Sparaco v. Lawler, Matusky, Skelly, Eng'rs LLP*,
  303 F.3d 460 (2d Cir. 2002) .............................................................................10

*Stewart v. Abend*,
  495 U.S. 207 (1990) ..........................................................................................17

*Stokes v. Brinor*,
  683 F.Supp.3d 713 (N.D. Ohio 2023) ...............................................................21

*Tang v. Putruss*,
  521 F.Supp.2d 600 (E.D. Mich. 2007) ..............................................................15

*Teter v. Glass Onion, Inc.*,
  723 F.Supp.2d 1138 (W.D. Mo. 2010) ..............................................................14

*The Authors Guild, Inc. v. Google, Inc.*,
  804 F.3d 202 (2d Cir. 2015) ........................................................................16, 19

*The Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg, L.P.*,
  756 F.3d 73 (2d Cir. 2014) ...............................................................................17

*Triangle Publ'ns, Inc. v. Sports Eye, Inc.*,
  415 F. Supp. 682 (E.D. Pa. 1976) ......................................................................9

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
  595 U.S. 178 (2022) ..........................................................................................12

*Walker v. Time Life Films, Inc.*,
  784 F.2d 44 (2d Cir. 1986) ...............................................................................10

*Wills v. Williams*,
  2021 4:20-cv-00984, 2021 WL 930135 (N.D. Ohio Mar. 11, 2021) ....................4

*Zomba Enters., Inc., v. Panorama Recs., Inc.*,
  491 F.3d 574 (6th Cir. 2007) ............................................................................19

**Statutes**

17 U.S.C.A. § 102(b) ..............................................................................................10

17 U.S.C. § 107 .................................................................................................15, 16

17 U.S.C. § 201(a) ..................................................................................................15

17 U.S.C. § 201(b) ...................................................................................................11

17 U.S.C. § 204(a) ...................................................................................................11

17 U.S.C. § 410(c) ...................................................................................................12

17 U.S.C. § 411 .......................................................................................................12

17 U.S.C. § 411(a) ...................................................................................................12

17 U.S.C. § 411(b) ...................................................................................................12

Community Service Act (42 U.S.C. § 12651) ............................................................3

**Other Authorities**

37 C.F.R. § 202.1(b) (1994) ...................................................................................10

Fed. R. Civ. P. 56 ..................................................................................................1, 8

Fed. R. Civ. P. 56(a)-(c) ...........................................................................................8

4 Nimmer On Copyright § 13D.02 ............................................................................9

2 Patry on Copyright § 4:9 ....................................................................................10

ServeOhio, *AmeriCorps Funding | Ohio Commission on Service and
    Volunteerism*, https://serve.ohio.gov/grants-and-funding/americorps-funding ......................3

## INTRODUCTION

This lawsuit is not really about copyright infringement. This lawsuit is about Plaintiff Gina Weisblat's ("Weisblat") erroneous belief that Defendant John Carroll University's ("JCU") AmeriCorps-funded *educational* program ("CRUSH Program") copies a *concept* to which she claims ownership. But Weisblat cannot claim a monopoly to a *concept* and, indeed, she should not have one over grant-funded programs designed to benefit the educational and professional growth of students and individuals interested in healthcare careers.

To further her claimed monopoly, Weisblat claims copyright infringement against JCU, namely, JCU's infringement of Northeast Ohio Medical University's ("NEOMED") draft 2013 application for AmeriCorps funding (the "2013 Application"). (*See* Dkt. 2 ¶¶ 16, 22-24, Ex. B (Dkt. 2-2).) Weisblat's claim has no merit.

As a threshold matter, the 2013 Application is not even a copyrightable "work." The fact that Weisblat has a registration certificate does not, *ipso facto*, demonstrate that the 2013 Application is copyrightable and, indeed, that application does not have the requisite originality for copyright protection.

*Second*, Weisblat does not own copyright to the 2013 Application—NEOMED does. To the extent Weisblat helped create the 2013 Application, she was employed by NEOMED. *NEOMED,* as her *employer*, owns any purported copyright to the 2013 Application under the work-for-hire doctrine, not Weisblat, as NEOMED's employee.

*Third,* Weisblat provided false information to the United States Copyright Office when she applied for registration of the 2013 Application (the "Registration"). The Registration is invalid as a result and Weisblat lacks the standing to assert this lawsuit.

*Fourth*, JCU has not infringed any purported copyright to the 2013 Application. Weisblat

1

and Anita Fakhoury nee Iveljic ("Fakhoury"), a JCU employee, created the purportedly infringing work – an "AmeriCorps Individualized Goal Plan" ("IGP") for JCU's AmeriCorps-funded rural and urban educational program. (*See* Dkt. 2-3.) As one of the creators of this IGP, JCU owns copyright to the IGP under the work-for-hire doctrine, which is also bolstered by Weisblat's willing collaboration in the IGP's creation as a JCU volunteer. Weisblat impliedly licensed to JCU any information she provided to JCU during her collaboration, including any information in the 2013 Application and the IGP.

*Fifth,* assuming Weisblat owned copyright to the 2013 Application, JCU was authorized to borrow the minimal language it used.. Weisblat expressly granted AmeriCorps the right to "obtain, use, modify, reproduce, publish, or disseminate publications and materials" produced under its projects, as well as to authorize JCU to also do so.

*Sixth,* JCU's use of any language from the 2013 Application constitutes fair use.

Finally, Weisblat cannot prove damages as a result of JCU's use of *de minimis* language from the 2013 Application, even if she could prove liability.

For each of these reasons, JCU's Motion for Summary Judgment should be granted.

## FACTS

**I.    Grant funds from AmeriCorps are at the center of this lawsuit.**

At the center of this lawsuit is AmeriCorps. (*See generally,* Dkt. 2 ¶¶ 13-15, 17, 23.) AmeriCorps is a federal agency focusing on volunteerism in disaster services, economic opportunity, education, environmental stewardship, healthy futures, and veterans and military families. (*See generally* Ex. A, Decl. of Rachel Smoot ("Smoot Decl.")) ¶ 2, Ex. 1.) AmeriCorps strategically aligns with organizations, such as colleges and universities, to impact these key areas, offering "people power" and grant funding. (*Id.*) AmeriCorps grants more than $800,000,000

annually and places approximately 200,000 members and volunteers with organizations across the country. (*Id.*; *see also* Smoot Decl. ¶ 3, Ex. 2.)

The Ohio Commission on Service and Volunteerism ("ServeOhio") is a state agency that partners with AmeriCorps and administers its activities in Ohio. (*See* Smoot Decl. ¶ 4, Ex. 3.) AmeriCorps opens its grant applications through ServeOhio. (*Id.*) *Individuals are not permitted to apply for funding* (*id.*) and only *organizations* are considered (*id.*). An organization must comply with the requirements in a "Notice of Funding Opportunity" ("NOFO") in applying for an AmeriCorps grant. (*See* Smoot Decl. ¶ 5, Ex. 4; *see generally*, ServeOhio, *AmeriCorps Funding | Ohio Commission on Service and Volunteerism*, https://serve.ohio.gov/grants-and-funding/americorps-funding). Pertinent to this case, the NOFO for the 2013 Application states:

> [t]o ensure that materials generated with [AmeriCorps] funding are available to the public and readily accessible to Grantees and non-Grantees, [AmeriCorps] reserves a royalty-free, nonexclusive, and irrevocable right to obtain, use, modify, reproduce, publish, or disseminate publications and materials produced under the award, including data, *and to authorize others to do so*.

(Smoot Decl. ¶ 10, Ex. 9 at Ex. 4 at 37) (emphasis added).[1]

## II. Weisblat claims that she owns rights to the "HPAC" program concept.

Weisblat alleges ownership over the concept of a "Health Professions Affinity Community or "HPAC" Program. (Smoot Decl. ¶ 9, Ex. 8 at 9.) HPAC is educational program that "aims to identify and engage youth, particularly from underrepresented and underserved communities, in the health of their communities . . . supporting them to pursue careers in the health professions." (Smoot Decl. ¶ 10, Ex. 9 at 22:23-23:8.) Weisblat claims that she "finalized the idea of HPAC" in 2012 while employed with NEOMED and in collaboration with Dr. Erik Porfeli, her then-

---

[1] The NOFO notes that grant funding is from "CNCS". *Id.* AmeriCorps is the operating name for the Corporation for National and Community Service ("CNCS"), which was created under Section 191 of the National and Community Service Act (42 U.S.C. § 12651).

supervisor. (*See* Smoot Decl. ¶ 9, Ex. 8 at 9*; id.* ¶ 10, Ex. 9 at 13:22, 16:16-18.) Porfeli confirmed

that the HPAC Program is an *idea and concept* that both *he and Weisblat* claim to have created.

(*Id.* at 22:18-22; 57:23-24, 58:1-3.)

Weisblat was employed with NEOMED from 2011 to 2018. (*See* Smoot Decl. ¶ 6, Ex. 5;

*id.* ¶ 9, Ex. 8 at 9-10.) NEOMED applied for AmeriCorps funding in connection with the HPAC

Program while Weisblat was working for NEOMED, from 2013 to 2018. (*Id.* at 10.) NEOMED—

not Weisblat—submitted the 2013 Application to AmeriCorps for funding for the 2014 fiscal year.

(Dkt. 2-2; Smoot Decl. ¶ 10, Ex. 9 at 32:18-20.) Weisblat has not produced a written agreement

that conveys NEOMED's rights in the 2013 Application to her.

### III.    JCU applies for AmeriCorps funding in 2019.

In 2018, University Hospitals ("UH") employed Weisblat. (*See* Smoot Decl. ¶ 7, Ex. 6 ¶

14.) Weisblat approached JCU to apply for an AmeriCorps grant for an HPAC-like program

although employed by UH, because UH was unable to be a sponsoring organization. (*Id.* ¶ 7, Ex.

6 ¶ 18; Smoot Decl. ¶ 9, Ex. 8 at 10.) JCU applied for an AmeriCorps grant through ServeOhio in

2019, with Weisblat collaborating as a voluntary, non-employee investigator for JCU, while also

a UH employee. (*Id.*; *see also* Ex. B, Decl. of Anita Fakhoury ("Fakhoury Decl.") ¶ 12.)

JCU drafted its 2019 AmeriCorps application (the "2019 JCU Application") in accordance

with the applicable NOFO of ServeOhio (*id.* ¶ 13)[2] and data in the 2019 JCU Application

specifically related to JCU (*id.*). The 2019 JCU Application and all subsequent JCU applications

from 2020-2023 contained data about JCU and its proposals (*Id.* ¶¶ 13-15), as opposed to the 2013

---

[2] As both AmeriCorps and ServeOhio are governmental agencies, this Courts may take judicial
notice of the information contained in AmeriCorps's and ServeOhio's websites, as governmental
agencies therein because the websites are self-authenticating. *See Wills v. Williams*, 2021 4:20-cv-
00984, 2021 WL 930135, at *1 n. 6 (N.D. Ohio Mar. 11, 2021) (citation omitted).

Application, which contained data about NEOMED. (*See* Dkt. 2-2.) JCU submitted its application on May 1, 2019 (*id.* ¶ 13, Ex. 1), and on or about August 2, 2019, JCU received a Notice of Grant Award from AmeriCorps, effective August 1, 2019-July 31, 2020 (*id.*, Ex. 3).

JCU then submitted an application to AmeriCorps for the 2021 fiscal year, which built off of JCU's proposal from the previous year. (*Id.* ¶ 13, Ex. 2.) Weisblat again collaborated with JCU for this application.

## IV.  Weisblat's volunteer position ends with JCU in November 2020.

JCU notified Weisblat in November 2020 that she was no longer needed as a volunteer in connection with JCU's CRUSH Program. (Smoot Decl. ¶ 7, Ex. 6 ¶ 35.) Weisblat never contacted JCU about any rights to the 2013 Application before initiating litigation against UH or JCU. At most, *Porfeli* contacted JCU and claimed intellectual property rights in the *HPAC Program idea* – "programmatic features and grants" that were "principally developed by Dr. Weisblat and [Porfeli] *while (sic) were employed at NEOMED*." (Fakhoury Decl. ¶ 19, Ex. 4 at JCU_0002469) (emphasis added). Porfeli did not mention copyright ownership in the 2013 Application, let alone expressly prohibit use of it. (*Id.*) Nor did Porfeli state that he was acting as Weisblat's agent. (*Id.*)

## V.  Weisblat initiates litigation against JCU, which arises from and relates to the same facts as this lawsuit.

On February 9, 2021, Weisblat filed a lawsuit in the Court of Common Pleas for Cuyahoga County, Ohio against JCU and others, including UH, arising from and relating to the same allegations made in this lawsuit. (Smoot Decl. ¶ 7, Ex. 6.) Weisblat alleged employment-type claims against JCU relating to its AmeriCorps program while she volunteered at JCU. (*Id.*) However, on August 3, 2022, Weisblat dismissed this case. . (*Id.* ¶ 8, Ex. 7.)

## VI.  Weisblat erroneously claims ownership over the 2013 Application.

On April 1, 2022, Weisblat filed for copyright registration of the 2013 Application (*see*

Dkt. 2-1). Weisblat neither identified NEOMED as an author nor obtained authorization to register it for on behalf of NEOMED. (*Id.*) Weisblat also failed to identify Porfeli as a creator, who collaborated on the NEOMED HPAC program and creation of the 2013 Application. (*Id.*) Weisblat has not submitted to the Copyright Office an assignment of NEOMED's rights to the 2013 Application to her. (*Id.*) Instead, Weisblat erroneously identified herself as the sole author of the 2013 Application, despite being an employee of NEOMED while contributing to the 2013 Application and despite Porfeli's contributions. Weisblat also denied the application of the work-for-hire doctrine, stating "no" under the "Work for Hire" portion of the filing. (*Id.*) The Copyright Office issued a certificate of registration for the 2013 Application on May 13, 2022. (*Id.*)

**VII.     Weisblat re-files her lawsuit as a purported copyright infringement case.**

With a materially false registration, Weisblat filed the Complaint in this case on November 15, 2022, alleging copyright infringement of the 2013 Application. (*See* Dkt. 2.) As she did in the dismissed litigation, Weisblat claims that she was "discharged without cause" from the "AmeriCorps HPAC program." (*Id.* ¶ 20.) Weisblat also alleges sole ownership of the 2013 Application, despite having created it in collaboration with others. (*Id.* ¶ 21.)

Weisblat claims JCU infringed the 2013 Application by JCU's creation of the "Individualized Goal Plan" ("IGP") identified in her Complaint. [3] (Dkt. 2 ¶ 24; Dkt. 2-3.) JCU's IGP is a 39-page document based upon a prior IGP created by Weisblat and another person, Anita Fakhoury. (Fakhoury Decl. ¶ 6.) Weisblat and Fakhoury created this document for JCU's CRUSH Program, to meet a ServeOhio request for performance reviews of members participating in the

---

[3] Weisblat has only alleged infringement of the 2013 Application. (Dkt. 2 ¶ 16.) She should be precluded from attempting to identify other allegedly infringed documents to oppose this Motion. Weisblat neither amended her Complaint nor identified additional infringing documents during discovery, despite JCU's requests.

AmeriCorps programs. (*Id.*) JCU used the IGP to help implement its AmeriCorps-funded program and monitor its progress. (*Id.*) The IGP describes the JCU CRUSH Program generally; the responsibilities of student members funded through the AmeriCorps program; timelines and aspirational goals under these timelines; performance measures; objectives and key component to those objections; personal and academic goals of members; and advice on resumes for members, among other information. (Dkt. 2-3; Fakhoury Decl. ¶ 17.) Importantly, JCU stopped using the IGP in 2021, prior to the issuance of the copyright registration. (*Id.* ¶ 18.)

Comparing the 2013 Application and the IGP, the 2013 Application does *not* contain an IGP. (*See* Dkt. 2-3.) Rather, Weisblat takes issue with the IGP's "Summary" paragraph – a single paragraph on page 2 of the 39-page IPG IGP – which contains *de minimis* language also found in the first paragraph of the 24-page 2013 Application (*See* Dkt. 1 ¶ 24; Dkt. 2-4):

- o "members of all ages and educational backgrounds to create a rural . . . "

- o ". . . volunteer health education corps that provides economically disadvantaged middle school through"

- o ". . . youth with *academic and career support* through the utilization of a service-learning model, across Ohio. The AmeriCorps members. . . "

- o ". . . . will *establish and deliver a Health Professions Affinity Community (HPAC) service learning based curriculum to students whose Ohio school districts lack the resources to provide academic and career skill support necessary for students to obtain a sustainable career in the health care industry*, a growing Ohio career opportunity. AmeriCorps members . . . . "

- o ". . . will leverage a sufficient number of additional participants to sustain the program after the three-year funding period is over. The project begins in August. . . "

- o "The project will focus on the Corporation for National & Community Service (CNCS) focus area of K-12 Success *including improving opportunities for participating student academic and career success in*… "

- o " rural Ohio school districts while *improving academic engagement and learning and increasing school attendance rate*s. In addition, the expected outcome for

> AmeriCorps members, . . ."
>
> o "is to improve *students' opportunities for career success, especially in the health care industry, by fostering college and career readiness, leadership skills and self-efficacy.*"

This above language is factual in nature and comprises only approximately 2.2% of the 2013 Application and approximately 2.3% of the IGP.[4] Notably, this language emphasizes the educational mission and goals of the CRUSH Program, for both members and students receiving the benefits of the CRUSH Program. The remaining language of each document differs from that of the other.[5]

## LAW AND ARGUMENT

### I. Summary judgment standard.

Fed. R. Civ. P. 56 provides that "[t]he court shall grant summary judgment if the movant shows" that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a)-(c). The moving party bears the initial burden of proving no genuine issue of material fact and, once proven, the burden shifts to the non-moving party to demonstrate the existence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[S]ummary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case." *Reed v. Freebird Film Prods., Inc.*, 664 F.Supp.2d 840, 843 (N.D. Ohio 2009) (citing *Celotex*, 477 U.S. at 322-23).

For the numerous and independent reasons described below, JCU's Motion for Summary Judgment should be granted. No genuine issue of material fact exists as to Weisblat's lack of a

---

[4] Weisblat alleges that the number of words common to the 2013 Application and the IGP totals approximately 195. (*See* Dkt. 2-4.)

[5] Weisblat did not produce the IGP in discovery. The IGP exhibit to her Complaint appears to be from an open source website, www.CourseHero.com.

copyright claim.

## II. As a threshold matter, the *de minimis* language used from the 2013 Registration is not copyrightable.

"To ultimately succeed on a claim of copyright infringement, a claimant must establish (1) ownership of a valid copyright, and; (2) *copying of constituent elements of the work that are original. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). "Copyright protection under the Copyright Act of 1976 extends only to '*original* works of authorship.'" *Hayden v. 2K Games, Inc.*, 629 F.Supp.3d 736, 744 (N.D. Ohio 2022) ("*Hayden I*") (citing 17 U.S.C. § 107(a)); *see also, Feist*, 499 U.S. at 345 (citing *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547–49 (1985)). "Original" means, first, that the work was independently created by the author, as opposed to copied from other works, and, second, that it possesses a some minimal degree of creativity. *Feist*, 499 U.S.at 345; *Hiller, LLC v. Success Grp. Int'l Learning All., LLC*, 976 F.3d 620, 626 (6th Cir. 2020). Unoriginal elements of a purportedly infringed work should be identified before comparing similarities between the plaintiff's and defendant's works for copyright infringement. *Kohus v. Mariol,* 328 F.3d 848, 853 (6th Cir. 2003). If purportedly infringed elements are not copyrightable—that is, non-original or ineligible for copyright protection—then the plaintiff cannot establish copyright infringement based upon the copying of those elements. *Id. See also Feist*, 499 U.S. at 361; 4 NIMMER ON COPYRIGHT § 13.D.02.

Copyright law does not protect facts, news, data, discoveries, theories, research, concepts, scientific principles, or "even characterizations of life," as they are unoriginal. *See Feist*, 499 U.S. at 359 (holding that facts and "sweat of the brow" are not copyrightable); *see also, Int'l News Serv. v. Associated Press*, 248 U.S. 215, 234 (1918) (stating that news is not copyrightable); *Triangle Publ'ns, Inc. v. Sports Eye, Inc.*, 415 F. Supp. 682, 685 n.9 (E.D. Pa. 1976) (stating that data is not copyrightable); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 842–43 (10th Cir.

1993) (stating that discoveries are not copyrightable); *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1074-75 (2d Cir. 1992) (stating that theories are not copyrightable); *Miller v. Universal City Studios, Inc*., 650 F.2d 1365, 1368-72 (5th Cir. 1981) (stating that research is not copyrightable); *Pelt v. CBS, Inc*., No. CV-92-6532 LGB (SHx), 1993 WL 659605, at *2 (C.D. Cal. Oct. 25, 1993) (stating that concepts are not copyrightable); *Sparaco v. Lawler, Matusky, Skelly, Eng'rs LLP,* 303 F.3d 460, 465-67 (2d Cir. 2002) (stating that scientific principles are not copyrightable); *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 49 (2d Cir. 1986) (stating that "characterizations of life" in certain parts of cities are not copyrightable). *See also Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 387 F.3d 522, 538 (6th Cir.2004); *ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.,* 402 F.3d 700, 707 (6th Cir. 2005); 2 Patry on Copyright § 4:9. Copyright protection does not extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in work. 17 U.S.C.A. § 102(b). *See also* 37 C.F.R. § 202.1(b) (1994).

Weisblat claims infringement of specific language in a publicly-available grant application – NEOMED's 2013 Application – as bullet-pointed above. (*See* Dkt. 2 ¶ 24; *supra* at 10). These highlighted elements, comprising only 2.2% of the word count for the 2013 Application, are not copyrightable as unoriginal. On their face, this language merely express *factual statements* regarding the *idea* and *concept* for a *program* that AmeriCorps has funded for years through NEOMED, Baldwin-Wallace, and JCU. (Fakhoury Decl. ¶¶ 6, 8, 10.) Indeed Weisblat cannot claim exclusive copyright to the limited language that can be used to describe the facts surrounding AmeriCorps' funded HPAC programs and the HPAC concept. For this first, threshold reason, JCU's Motion should be granted.

**III.    NEOMED is the owner of any copyright to the 2013 Application under the work-for-hire doctrine.**

10

If an employee creates a work for an employer, the employer owns the copyright to that work under the work-for-hire doctrine, as set forth in 17 U.S.C. § 201(b):

> In the case of a work made for hire, *the employer or other person for whom the work was prepared is considered the author* for purposes of this title, and, unless *the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.*

(emphasis added). *See also, Gilleland v. Schanhals*, 55 Fed. App'x 257, 259-60 (6th Cir. 2003) (citing 17 U.S.C. §§ 201(d), 204(a)). "A transfer of copyright ownership . . . is not valid unless an instrument of conveyance ... is in writing and signed by the owner of the rights conveyed . . . ." 17 U.S.C. § 204(a). *See also Cmty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 749 (1989).

Weisblat and Porfeli wrote the 2013 Application while employed at NEOMED. As a result, NEOMED owns copyright to the 2013 Application under the work-for-hire doctrine. NEOMED employed Weisblat to prepare grant applications for it under the supervision of Porfeli. (Smoot Decl. ¶ 10, Ex. 9 at 21:23-22:8.) One such grant application was the 2013 Application—and NEOMED submitted it to AmeriCorps for funding during the 2014 fiscal year, not Weisblat. (*Id.* ¶ 9, Ex. 8 at 10; *id.* ¶ 10, Ex. 9 at 32:18-20.) Weisblat has never identified or produced a written assignment through which NEOMED conveyed copyright to the 2013 Application to her (*Id.* ¶ 9, Ex. 8 at 13-14) and, indeed, the Court need only reference the Registration, which does not include any assignment information as further proof of this undisputed fact. (Dkt. 2-1.)

Based on these undisputed facts, NEOMED still owns copyright to the 2013 Application, even assuming the 2013 Application can even be viewed as copyrightable. *Gilleland*, 55 Fed. App'x at 259-60; *Feist*, 499 U.S. at 361. Weisblat cannot claim infringement for a copyright that she does not own and, for this second, independent reason, JCU's Motion should be granted.

**IV.    Weisblat does not have standing to file this lawsuit as the Registration is invalid.**

17 U.S.C. § 411(a) requires a certificate of copyright registration to institute a copyright infringement lawsuit. A registration is valid unless the certificate contains "inaccurate information . . . included on the application for copyright registration with knowledge that it was inaccurate; and the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b); *see also Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 184 (2022). "Knowledge," in this context, bears its "ordinary meaning." *Id.* at 186. To the extent a copyright holder claims lack of knowledge of either facts or law to avoid the consequences of an inaccurate application, "courts need not automatically accept a copyright holder's claim that it was unaware of the relevant legal requirements of copyright law." *Id.* at 187.

No genuine issue of dispute exists over whether Weisblat provided inaccurate information while obtaining the Registration—she indisputably did.[6] First, Weisblat erroneously denied that the work-for-hire doctrine applied in her application, knowing that she had co-authored the 2013 Application while being NEOMED's employee. (Dkt. 2-1; *see also* Smoot Decl. ¶ 6, Ex. 5.) Weisblat also failed to disclose her co-author, Porfeli. (Dkt. 2-1; Smoot Decl. ¶ 10, Ex. 9 at 51:24-52:6.) Based upon these inaccuracies on authorship and the work-for-hire doctrine, Weisblat knowingly provided false information to obtain the Registration, which is invalid. As a result, Weisblat does not even have standing to file this lawsuit and JCU's Motion should be granted for this third, independent reason. *See* 17 U.S.C. § 411; *see also Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 302-03 (2019) (holding copyright registration as a prerequisite to bringing an infringement claim).

**V.    JCU has the right to use language in the 2013 Application.**

---

[6] Pursuant to 17 U.S.C. § 410(c), a certificate of a registration must be obtained before or within five years after first publication of the work to constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate. Weisblat did *not* obtain this registration within five years of JCU submitting the 2013 Application to AmeriCorps.

The undisputed evidence further demonstrates that JCU, *first*, had authorization to use the 2013 Application from AmeriCorps and, *second,* to the extent Weisblat had *any* copyright to the 2013 Application, she impliedly licensed it to JCU.

### A.  AmeriCorps authorized JCU to use language in the 2013 Application.

The NOFO that NEOMED followed when submitting the 2013 Application provides that NEOMED granted AmeriCorps broad rights to use the 2013 Application—and to grant others the right to use it:

> To ensure that materials generated with CNCS funding are available to the public and readily accessible to Grantees and non-Grantees, CNCS *reserves a royalty-free, nonexclusive, and irrevocable right to obtain, use, modify, reproduce, publish, or disseminate publications and materials produced under the award, including data, and to authorize others to do so.*

(Smoot Decl. ¶ 10, Ex. 9 at Ex. 4) (emphasis added).

NEOMED accordingly granted AmeriCorps *irrevocable* rights to "use, modify, reproduce, publish, and disseminate" language contained in the 2013 Application and to authorize others to do so when NEOMED applied for, and ultimately obtained, grant funding. Thus, while JCU's use of language in the 2013 Application is *de minimis,* at most, JCU's use of this language as a "non-Grantee" was nonetheless authorized by AmeriCorps, as "Grantor." For this fourth, independent reason, JCU's Motion for Summary Judgment should be granted.

### B.  Weisblat impliedly licensed use of the 2013 Application to JCU.

"An implied license is an unwritten license to use a work that the court infers from the circumstances and from the conduct between the parties." *Hayden I*, 629 F.Supp.3d at 749 (citing *Melanie Howard Music, Inc. v. Warner Bros. Records, Inc.*, No. 3:08-0979, 2009 WL 3784611, at *5 (M.D. Tenn. Nov. 10, 2009)). The existence of an implied license to use copyrighted material precludes a finding of copyright infringement. *Id.* (citing *Murphy v. Lazarev*, 589 Fed. App'x. 757,

765 (6th Cir. 2014)). If evidence leads to the conclusion that a copyright owner intended a defendant to use its copyrighted work, the copyright owner cannot claim copyright infringement for that use. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 500 (5th Cir. 2012); *Hayden I*, 629 F.Supp.3d at 749 (citing *Mahavisno v. Compendia Bioscience, Inc.*, 164 F. Supp.3d 964, 968-9 (E.D. Mich. 2016)).

Assuming Weisblat owns copyright to the 2013 Application and had proper standing to assert this lawsuit—and putting aside JCU's right to use the 2013 Application from AmeriCorps—Weisblat granted JCU an implied license to use the 2013 Application when assisting JCU with its applications for AmeriCorps funding. Weisblat acknowledges that she provided information for JCU's applications, which included the 2013 Application. (*See* Smoot Decl. ¶ 9, Ex. 8 at 8, 10, 15 ("I provided JCU with an extensive body of work from previous grants. This comprehensive repository served as a reference point and was frequently utilized to strengthen new proposals and offer insights into various funding opportunities.")). Weisblat also admits to providing JCU with extensive resources to "secur[e] new or continued funding." *See* Smoot Decl. ¶ 9, Ex. 8 at 15-16.

Moreover, Weisblat never expressly revoked JCU's *de minimis* use of language from the 2013 Agreement, further proving this implied license. *Berg v. Symons*, 393 F.Supp.2d 525, 543 (S.D. Texas 2005). *see also Teter v. Glass Onion, Inc.*, 723 F.Supp.2d 1138, 1150 (W.D. Mo. 2010); *Keane Dealer Servs., Inc. v. Harts*, 968 F.Supp. 944, 947 (S.D.N.Y. 1997). And even if the claim in this lawsuit could be construed as an express revocation of use of the 2013 Application, this revocation is moot— Weisblat filed this lawsuit on November 15, 2022, a year after JCU had already ceased use of the IGP. (Fakhoury Decl. ¶ 18.) For this fifth, independent reason, JCU's Motion for Summary Judgment should be granted.

**C.  JCU owns copyright to the IGP as a co-author and had the right to use it.**

Joint authorship of a work entitles each joint author the right to use or to license the work as he or she wishes. *Tang v. Putruss*, 521 F.Supp.2d 600, 604 (E.D. Mich. 2007) (citation omitted). *See also* 17 U.S.C. § 201(a). "Under copyright law, a 'joint work' is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole.'" *Tang*, 521 F.Supp.2d at 604 (citing 17 U.S.C. § 101).

Fakhoury co-authored the purportedly-infringing document identified in the Complaint – the IGP that JCU used for the CRUSH Program (Dkt. 2 ¶ 24; Dkt. 2-3) – with Weisblat, while Fakhoury was employed with JCU. As a result, JCU is, at least, a joint owner of this IGP through the work-for-hire doctrine and is authorized to use it as a joint owner. (Fakhoury Decl. ¶¶ 6-8, 16.) Moreover, because Weisblat collaborated in the creation of JCU's IGP with Fakhoury as a volunteer, Weisblat also impliedly licensed to JCU the right to use the IGP and any language contained in it. JCU legally used the IGP for these reasons and for this sixth, independent reason, JCU's Motion for Summary Judgment should be granted.

**VI.       JCU's *de minimis* use constitutes fair use.**

A "fair use" of a copyrighted work is not an infringement. 17 U.S.C. § 107; *see generally, Princeton Univ. Press v. Mich. Document Servs.*, 99 F.3d 1384, 1385 (6th Cir. 1996) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 579, 577 (1994); *Bell v. Worthington City Sch. Dist.*, No. 2:18-CV-961, 2020 WL 2905803, at *6 (S.D. Ohio June 2, 2020). The Copyright Act both outlines the framework for evaluating fair use and provides examples of purposes that support fair use, such as criticism, comment, news reporting, *teaching, scholarship, and research*. The Copyright Act delineates four factors that courts consider to decide fair use: (1) the purpose and character of the use: (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; (4) the effect of the use on the

potential market for or value of the copyrighted work. 17 U.S.C § 107. Courts apply these factors on a case-by-case basis. *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1197 (2021); *Campbell*, 510 U.S. at 577. All four of these factors weigh heavily in favor of applying the fair use doctrine to JCU's *de minimis* use of language from the 2013 Application.

### A.  The *purpose and character* of JCU's use favors a fair use finding.

Courts inquire into the following when considering whether the "purpose and nature of a defendant's use" is fair: whether the use is "non-commercial" in nature and whether the use is "transformative"—both of which favor fair use. *See, e.g.*, *Bell*, 2020 WL 2905803 at *6; *Higgins v. Detroit Educ. Television Found.*, 4 F. Supp. 2d 701, 705 n.7 (E.D. Mich. 1998). A finding that the public may benefit from the use also may weigh in favor of a finding of fair use under this factor. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1166 (9th Cir. 2007); *The Authors Guild, Inc. v. Google, Inc.*, 804 F.3d 202, 225 (2d Cir. 2015). JCU's "non-commercial" and "transformative" use of the 2013 Application favors a fair use finding.

"Non-commercial uses" are more likely to qualify as fair use when compared to commercial uses. *Campbell*, 510 U.S. at 585. In this regard, JCU's *de minimis* use of language from the 2013 Application was indisputably non-commercial. JCU, a non-profit institution, used that language in its IGP which, in turn, was used to carry out and fulfill the overall educational mission for the CRUSH Program.

In terms of "transformative use," a use is "transformative" if it adds to the underlying copyrighted work, such that the new work has a different function, purpose, or character. *See Campbell*, 510 U.S at 579. A use may be "transformative" if it modifies the work itself and uses the work in a context different than the original. *Google,* 141 S. Ct. at 1203. Not only was JCU's *de minimis* use of the 2013 Application language "non-commercial," it was "transformative."

16

Unlike NEOMED's use of this language for its AmeriCorps grant application, JCU used it in connection with the IGP to carry out its CRUSH Program— not for an application. Indeed, 97.8% of the IGP is comprised of entirely different language from the 2013 Application, further demonstrating how JCU's use was "transformative."

Importantly, if a party's use of copyrighted material falls into one of the specific purposes qualifying as "fair use" by the statute, such as teaching, research, or scholarship, the use is *presumptively fair*. *Bell*, 2020 WL 2905803 at \*6; *Higgins*, 4 F. Supp. 2d at 705 n.7 (citing to *Wright v. Warner Books, Inc.*, 953 F.2d 731, 736 (2d Cir.1991)*; see also Nat'l Rifle Ass'n of Am. ("NRA") v. Handgun Control Fed'n of Ohio*, 15 F.3d 559, 561 (6th Cir. 1994). JCU's use of the IGP with its CRUSH Program squarely falls into several fair use purposes in the Copyright Act—teaching, research, and scholarship purposes. (Fakhoury Decl. ¶¶ 16-17); *Bell*, 2020 WL 2905803 at \*6. This fact, combined with its "non-commercial" and "transformative" use of the 2013 Application, weigh heavily and presumptively in favor of a fair use finding.

### B.  The "nature" of the copyrighted work favors a fair use finding.

The "nature" of the copyrighted work considers the extent to which a work is creative or factual and, moreover, published or unpublished. The less creative a work, the farther it is from the core of the scope of copyright protection. *See Bell*, 2020 WL 2905803 at \*7; *Stewart v. Abend*, 495 U.S. 207, 237-38 (1990)). Likewise, the more factual a work, the closer it becomes to falling out of copyright protection, which does not protect ideas or facts. *See Bell*, 2020 WL 2905803 at \*7; *The Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg, L.P.*, 756 F.3d 73, 89 (2d Cir. 2014); *see also, NRA* 15 F.3d at 562 (stating that "[t]he law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy."); *Harper & Row*, 471 U.S. at 563. A determination of whether a work is "published" or "unpublished" is also critical element of this "nature" factor,

17

*Kelly*, 336 F.3d at 820, and published uses are more likely to qualify as fair use. *Id.*; *Perfect 10*, 508 F.3d at 1167.

This factor also weighs heavily in favor of a fair use finding, as JCU's use was, first, factual. As stated above in Section II, *supra*, the *de minimis* language used in the IGP from the 2013 Application is a mere factual summary of the HPAC concept which, as stated above, is not original or copyrightable. Moreover, the IGP is published, also weighing heavily in favor of fair use. The IGP was used and disseminated with the CRUSH Program and contains *de minimis* language from another "published" document – the 2013 Application itself.

Because the nature of JCU's use was both "non-commercial" and "transformative," this factor also favors fair use.

### C. The "amount and substantiality of the portion used in relation to the copyrighted work as a whole" also favors a fair use finding.

The third factor, the "amount and substantiality of the portion used," analyzes whether the new work uses only as much of the original work as necessary. This factor is both qualitative and quantitative. With regard to the former, use of a relatively small portion of a copyrighted work generally supports fair use, unless that portion is "at the heart" of the original work. *Campbell*, 510 U.S. at 587; *Blanch*, 467 F.3d at 257. With regard to the latter, quantitative analysis, courts compare the amount of the original work that the alleged infringer has used with the entirety of the original work. *NRA*, 15 F.3d at 562; *Higgins*, 4 F.Supp.2d at 707; *Bell*, 2020 WL 2905803 at *8.

This third factor also weighs in favor of a fair use finding. From a qualitative standpoint, JCU only used portions of one paragraph in the 2013 Application, the "executive summary"— *merely a summary*. The remainder of the 2013 Application contains the more detailed, substantive information about the actual application. Moreover, as stated above in Section II, this executive

18

summary is not even copyrightable, consisting largely of facts that summarize the HPAC concept. The *de minimus* language used by JCU in the IGP is neither qualitatively significant or copyrightable.

And, from a quantitative standpoint, JCU only used 195 words of the 8,538-word, 24-page 2013 Application. (*Compare* Smoot Decl. ¶ 11, Ex. 10 *with id.* ¶ 12, Ex. 11.) JCU's *de minimis* use is both qualitatively and quantitatively insignificant and, as a result, this factor also heavily favors a fair use finding.

### D. The "effect of the use" favors a fair use finding.

The fourth factor, the "effect of the use on the potential market for value of the copyrighted work," evaluates any "market" harm from a purportedly infringing use. *See NRA*, 15 F.3d at 561-62. "Market" harm is typically observed in several forms, such as lost or diverted sales of copies of the plaintiff's work, *see Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 927-28 (2d Cir. 1994); lost royalties or licensing revenue, *see, e.g., Zomba Enters., Inc., v. Panorama Recs., Inc.*, 491 F.3d 574, 583-84 (6th Cir. 2007); and barriers to entry in yet-unexploited markets, *see, e.g., A&M Recs., Inc.,* 239 F.3d at 1016. Relevant to this factor, uses that provide a significant benefit to the public favor fair use. *See, e.g., NRA*, 15 F.3d at 562  (stating "[t]he scope of the fair use doctrine is wider when the use relates to issues of public concern."); *see also Consumers Union of U.S., Inc. v. Gen. Signal Corp.*, 724 F.2d 1044, 1050 (2d Cir.1983), cert. denied; *Perfect 10*, 508 F.3d at 1166, 1168; *Google, Inc.,* 804 F.3d at 207.

This fourth factor also weighs in favor of a fair use.  No "market" or "potential market" exists for potential "exploitation" of the 2013 Application. As stated above, NEOMED submitted the 2013 Application to apply for *AmeriCorps grant funding for an HPAC program* – not for any commercial exploitation of an actual market in commerce. And even assuming governmental grant

funding could somehow be considered a "market"—and Weisblat has offered no evidence on this point—Weisblat, herself, cannot exploit it. AmeriCorps does not grant funds to individuals. (Fakhoury Decl. ¶ 11.) In fact, Weisblat's inability to exploit this purported "market" is made even more evident after considering her own role in JCU's *de minimis* use: Weisblat was a volunteer, non-employee who authorized JCU to use language from the 2013 Application and was never entitled to funds.

Further supporting a fair use finding, JCU's *de minimis* use of the 2013 Application language in the IGP  provided significant benefit and disseminated important information to the general public, JCU used its IGP to deliver healthcare and education for the benefit of residents in rural and urban areas in Ohio. (Fakhoury Decl. ¶¶ 8, 16.) JCU also used its IGP to facilitate the learning experience of its AmeriCorps members in its CRUSH Program. Finally, while JCU only used the IGP for its CRUSH Program, the IGP's contents discuss how to best implement a program to encourage healthcare careers and deliver healthcare in rural and urban areas—all of which is information that benefits the public interest.

No "market" exists for the 2013 Application and JCU used the IGP to benefit and disseminate important information to the public. This factor also heavily favors a fair use finding, As all of the other factors discussed above also point to a fair use finding, JCU's Motion for Summary Judgment should be granted for this seventh, independent reason.

## VII. Weisblat Cannot Prove Damages as a Matter of Law.

Copyright owners have the choice of recovering either actual damages" or statutory damages. *Stokes v. Brinor*, [683 F.Supp.3d 713](#), 724 (N.D. Ohio 2023) (*citing* 17 U.S.C. § 504(a)). Weisblat cannot prove either.

Regarding statutory damages, these damages are not available for infringement of

20

copyright in an unpublished work before the effective date of its registration or infringement after the first publication of a work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work *Stokes*, [683 F.Supp.3d at 725](citing 17 U.S.C. § 412).

Weisblat is seeking statutory damages (Dkt. [2](¶ 30) but is not entitled to them. Weisblat admits that NEOMED submitted the publicly-available 2013 Application to AmeriCorps and claims to have co-authored it with Porfeli *over a decade ago*. (Smoot Decl. ¶ 9, Ex. 8 at 9.) However, the date of the Registration is May 13, 2022, a decade *after* NEOMED submitted – or "publicized" – the 2013 Application and after JCU ceased using the IGP. Therefore, the Copyright Act precludes Weisblat from statutory damages based upon JCU's use of the *de minimis* language from the 2013 Application in the IGP. *See RPM Mgmt., Inc. v. Apple*, [943 F.Supp. 837](S.D. Ohio 1996). *See also Cable/Home Commc'n Corp. v. Network Prods., Inc.*, [902 F.2d 829](11th Cir. 1990).

Nor is Weisblat entitled to *actual* damages. A copyright owner may elect to recover the profits of the infringer and any actual damages suffered as a result of copyright infringement. *Accord, Hayden v. 2K Games, Inc.*, [2022 WL 3585655](at *3 (N.D. Ohio Aug. 22, 2022) ("*Hayden II*") (citing *Cotter v. Christus Gardens, Inc.*, [238 F.3d 420](6th Cir. 2000)).

First, Weisblat cannot prove any "profits of the infringer" to support an actual damages claim. JCU is a non-profit organization and, by definition, cannot have profits.. JCU used granted funds from AmeriCorps to support student volunteers and individuals members working directly on the grant. (Fakhoury Decl. ¶ 12.)

Moreover, Weisblat cannot prove any other form of "actual damages," as she never entitled to any funding (*Id.* ¶¶ 11-12) as an unpaid, non-employee volunteer at JCU with respect to its

HPAC Program. (*Id.* ¶ 12).

The undisputed facts demonstrate that Weisblat cannot prove JCU's liability on her copyright claim or any damages.

## CONCLUSION

As set forth above, the undisputed facts demonstrate seven, independent reasons why JCU cannot be liable for copyright infringement. Even further, Weisblat is unable to prove damages, whether statutory or actual. JCU's Motion for Summary Judgment should be granted and Weisblat's copyright claim should be dismissed.

Dated: May 22, 2024_____          Respectfully submitted,

*/s/ Rachel Smoot*
Philip R. Bautista (0073272)
pbautista@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114
Phone: (216) 241-2838
Fax: (216) 241-3707

Rachel A. Smoot (0092296)
rsmoot@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
41 S. High Street, Suite 1800
Columbus, OH 43215
Phone: (614) 221-2838
Fax: (614) 221-2007

*Attorneys for Defendant,*
*John Carroll University*

## <u>CERTIFICATION OF TRACK ASSIGNMENT AND<br>OF COMPLIANCE WITH WORD COUNT</u>

The undersigned hereby certifies pursuant to Local Rule 7.1(f) that (i) the parties agreed this case will proceed on the standard track; and (ii) this memorandum adheres to the word count limitation applicable to memoranda relating to dispositive motions in cases assigned to the standard track pursuant to this Court's Standing Order dated January 2, 2024.

_____

*/s/ Rachel Smoot*_____
*Attorney for Defendant,*
*John Carroll University*

## <u>CERTIFICATE OF SERVICE</u>

I certify that JCU filed the foregoing Motion for Summary Judgment and Memorandum in Support electronically, through the Court's electronic filing system. Notice of this filing will be sent to all registered parties by operation of this electronic filing system. I also certify that a true and accurate copy of the foregoing was served upon the following party via electronic mail and U.S. Mail on May 22, 2024:

Dr. Gina Weisblat
2358 Adleigh Drive
Cleveland Heights, OH 44106

*Plaintiff, pro se*

_____

*/s/ Rachel Smoot*
*Attorney for Defendant,*
*John Carroll University*