# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| GINA WEISBLAT, | ) | Case No. 1:22-cv-02064 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| JOHN CARROLL UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Gina Weisblat claims the copyright to a draft grant application and contends that her former employer, Defendant John Carroll University, infringed on her intellectual property rights.   John Carroll University moved for summary judgment on Plaintiff's copyright infringement claim.   After Dr. Weisblat's counsel withdrew at the close of discovery, the Court instructed her to respond substantively to Defendant's first two legal arguments:  that certain language from Dr. Weisblat's grant application is not copyrightable as a matter of law and that, even if it is copyrightable, Northeast Ohio Medical University is the owner of any copyright under the work-for-hire doctrine.  Plaintiff opposes the motion on those grounds, and presumably others.   For the following reasons, the Court **GRANTS** summary judgment for Defendant.

## STATEMENT OF FACTS

On John Carroll University's motion for summary judgment, the Court construes the facts in Plaintiff's favor.  As relevant to the motion for summary judgment on the issues before the Court, the record establishes the following facts.

### A.    Background

By way of background, AmeriCorps is a federal agency that "works with communities and supports a variety of public-private partnerships and governmental collaboration to address local challenges through service."  (ECF No. 30-1, PageID #260.)  The Ohio Commission on Service and Volunteerism, known as ServeOhio, administers AmeriCorps programs in Ohio and "provides grants to organizations that demonstrate they will engage AmeriCorps members to provide a service intervention that addresses a critical need in Ohio."  (*Id.*, PageID #271.)  To receive a grant, an organization must submit an application that follows specific formatting and substantive requirements.  (ECF No. 30-1, PageID #354–55 (discussing the guidelines for writing grant proposals); *see also AmeriCorps Funding*, ServeOhio, https://serve.ohio.gov/grants-and-funding/americorps-funding   [https://perma.cc/ 4NKG-2EL6] (last visited Sept. 12, 2024).)

Dr. Weisblat is a social scientist and professor who has managed a large portfolio of grant-funded programming, including a program titled "The Health Professions Affinity Community."  (ECF No. 30-1, PageID #272–78.)  This educational program "aims to identify and engage youth, particularly from underrepresented and underserved communities, in the health of their communities" and support their pursuit of careers in the healthcare industry.  (*Id.*, PageID #338–39.)

### B.    The HPAC Program at NEOMED

In 2012, Northeast Ohio Medical University, also known as NEOMED, hired Dr. Weisblat as a faculty member, and her work included preparing grant applications for AmeriCorps-funded projects.  (ECF No. 34, PageID #666.)  During her tenure at NEOMED, Dr. Weisblat developed the idea for the Health Professions Affinity Community program in collaboration with Dr. Erik Porfeli, her former co-author and supervisor.  (ECF No. 30-1, PageID #275, #329, #339 & #359; ECF No. 34, ¶ 6, PageID #592.)

In 2013, while employed at NEOMED, Dr. Weisblat and Dr. Porfeli prepared an AmeriCorps grant application to fund the HPAC program.  (ECF No. 30-1, PageID #349 & #351; ECF No. 2-2, PageID #11.)  Dr. Weisblat credits the idea for the program as building on all her research and experience throughout her career, and the substantive parts of the grant application derive from her prior articles, book chapters, and programming.  (ECF No. 30-1, PageID #304–05; ECF No. 34, ¶¶ 2–6, PageID #591–92.)  Dr. Porfeli describes himself as a "co-founder of the HPAC program" (ECF No. 30-2, PageID #567) and testified that, in his work with Dr. Weisblat, they "were taking content from various grant proposals to create new grant proposals" (ECF No. 30-1, PageID #349).

Specifically, the language that Dr. Weisblat used in the 2013 draft grant application "derives from the language used to create and fund" a community organization titled "Teens Networking Together," which Dr. Weisblat developed years earlier.  (ECF No. 34, ¶ 2, PageID #591.)  Dr. Weisblat also attests that a book chapter she co-authored discusses similar concepts "using much of the same wording"

3

as the 2013 grant application.  (*Id.*, ¶ 3; *id.*, PageID #595–608 (listing co-authors).)
Additionally, Dr. Weisblat wrote three other publications that "contain wording very
similar" to the 2013 grant application—including one paper while employed at
NEOMED.  (*Id.*, ¶¶ 4–6, PageID #592.)  Dr. Weisblat is listed as a co-author on some
of these publications. (*See, e.g.*, *id.*, PageID #621 ("An Exemplar in Mentoring and
Professional Development:  Teaching Graduate Students Transferable Skills Beyond
the Discipline"); *id.*, PageID #646 ("Through the Lens of the Students:  Using
Narrative Inquiry to Evaluate an Innovative Urban High School").)

NEOMED applied for and received AmeriCorps funding for the Health
Professions Affinity Community program for the 2014 fiscal year.  (ECF No. 30-1,
PageID #305–06; *see also* ECF No. 2-2.)  With the title of principal investigator,
Dr. Weisblat ran the program at NEOMED from 2013 until 2018.  (ECF No. 30-1,
PageID #306.)  Dr. Porfeli testified that he was a co-principal investigator for the
program while at NEOMED.  (*Id.*, PageID #404.)

On March 7, 2018, Dr. Weisblat and NEOMED signed a separation agreement
and mutual release.  (ECF No. 34, PageID #657–64.)  Under the agreement,
Dr. Weisblat would "retain or become, upon the approval of the respective granting
authority, the Principal Investigator . . . of the following grants, with all the attendant
rights and responsibilities of [Principal Investigator], including employee/volunteer
supervision and fiscal accountability. . . ."  (*Id.*, PageID #658.)  The agreement then
lists nine different grants—including the grant funding the Health Professions
Affinity Community program.  (*Id.*, PageID #658–59.)  Dr. Weisblat contends that

4

this language awards her "sole rights" to the HPAC program.  (*Id.*, ¶ 11, PageID #593.)

The separation agreement also allows Dr. Weisblat to "request extensions" to complete current grant-related obligations, "reasonably and promptly transfer any unexpired grants to another qualified institution," cooperate with any reporting obligations for the grants, and "retain her direct reports . . . and assume responsibility for all programmatic activities and fiscal management" for the grants.  (*Id.*, PageID #659.)  The agreement did not allow Dr. Weisblat to "renew any of the [] grants through NEOMED," "submit any new grants through NEOMED," or "receive any matching fund support from NEOMED for any of the [] grants."  (*Id.*, PageID #660.)

The agreement does not explicitly purport to assign or transfer any intellectual property rights associated with the grants to Dr. Weisblat.  On this point, Dr. Weisblat proffers the declaration of Maria R. Schimer, NEOMED's general counsel.  (*Id.*, PageID #666.)  On July 8, 2024, Schimer attested that:  "In accordance with the NEOMED Intellectual Property Policy, Dr. Weisblat was granted the rights under the Separation and Release Agreement to use the intellectual property that she produced under the Ameri Corp Program while an employee of NEOMED."  (*Id.*)  Additionally, "[i]n accordance with the NEOMED Intellectual Property Policy, NEOMED does not assert any copyright ownership for Dr. Weisblat's work on the Ameri Corp Program during her employment at NEOMED, including the year 2013."  (*Id.*)  While neither party provides the Intellectual Property Policy, it is a publicly available regulation.  *See* Ohio Admin. Code § 3349–20–50.

5

### C.     The HPAC Program at John Carroll University

After leaving NEOMED, Dr. Weisblat, who was then employed by University Hospitals, moved the Health Professions Affinity Community program and its related grant to Baldwin Wallace University as the principal investigator.  (ECF No. 30-1, PageID #306.)  Due to a conflict between the AmeriCorps director at Baldwin Wallace and Dr. Weisblat's supervisor at University Hospitals, she moved again.  (*Id.*, PageID #306 & 309–10.)  In 2018, Dr. Weisblat approached John Carroll University to apply for an AmeriCorps grant for the HPAC program.  (*Id.*)  John Carroll University agreed to apply for AmeriCorps funding to continue the HPAC program in collaboration with University Hospitals.  (ECF No. 30-2, ¶ 12, PageID #506.)

At John Carroll University, Dr. Weisblat served as a co-principal investigator for the HPAC program, and she frequently worked with Erica Kennedy and Anita Iveljic Fakhoury to manage the program and develop other grant applications.  (ECF No. 30-1, PageID #311–12; ECF No. 30-2, ¶ 6, PageID #504–05.)  Dr. Weisblat was an unpaid volunteer at John Carroll University, not an employee.  (ECF No. 30-2, PageID #566.)

On May 1, 2019, John Carroll University applied for AmeriCorps funding for the Health Professions Affinity Community program and was awarded funding effective August 1, 2019.  (*Id.*, ¶¶ 12–13, PageID #506–07; *id.*, PageID #561–62.) Dr. Weisblat collaborated on this grant application.  (*Id.*, ¶¶ 11–12, PageID #506.) John Carroll University applied for AmeriCorps funding again in 2020 for the 2021 fiscal year, and Dr. Weisblat also contributed to that application.  (*Id.*, ¶ 13, PageID #506–07.)  At John Carroll University, the Health Professions Affinity Community

program became known as the Corps for Rural and Urban Success and Health program, or CRUSH.  (*Id.*, PageID #566.)

In November 2020, John Carroll University and Dr. Weisblat parted ways. John Carroll University claims that Dr. Weisblat was no longer needed as a volunteer in connection with the HPAC/CRUSH program.  (ECF No. 30-1, ¶¶ 35 & 37, PageID #285.)  Dr. Weisblat claims that she was "forcibly removed from the program and falsely accused of wrongdoing."  (ECF No. 34, ¶ 9, PageID #592.)  Whatever the case, the reason for Dr. Weisblat's separation from John Carroll University is not material to the legal dispute over the intellectual property rights at issue.

### D.    The Intellectual Property at Issue

After Dr. Weisblat's departure, John Carroll University submitted AmeriCorps grant applications for the HPAC/CRUSH program in 2021, 2022, and 2023.  (ECF No. 30-2, ¶ 14, PageID #507.)  Fakhoury attested that the subsequent applications "built off each previous year's grant application, supplying new/revised information to ServeOhio in support of its grant applications."  (*Id.*, ¶ 15.)

In 2021, Dr. Porfeli contacted John Carroll University after learning of Dr. Weisblat's departure to express his concern that the university was using intellectual property that he and Dr. Weisblat created in the HPAC/CRUSH program. (ECF No. 30-2, PageID #567.)  Kennedy responded that the grant and its associated intellectual property "continues to belong to the grantee institution ([John Carroll University]) and to the federal government."  (*Id.*, PageID #566.)  In John Carroll University's view, "[a]ny materials used in the . . . AmeriCorps program were either developed" by the program, "owned by [John Carroll University] and/or the federal

7

government," or "in the public domain and not subject to intellectual property rights." (*Id.*)

In these emails, Dr. Porfeli did not raise a concern about infringement of any particular grant application.  (*Id.*, PageID #565–67.)  In his deposition, Dr. Porfeli testified that he did not patent the HPAC program or copyright any of the program's grant application materials.  (*Id.*, PageID #341–45.)  Additionally, Dr. Porfeli has not asserted any purported intellectual property rights in the 2013 draft grant application against anyone.  (*Id.*, PageID #388.)

According to Fakhoury, she and Dr. Weisblat created an individualized goal plan, which describes procedures to "track[] each AmeriCorps member's individual goals and performance while serving under the grant."  (ECF No. 30-2, ¶ 6, PageID #504–05.)  The two developed this individualized goal plan before working at John Carroll University and created it to comply with AmeriCorps grant conditions, which required grant holders to use this type of performance rubric.  (*Id.*)  Fakhoury used "publicly-accessible materials" in creating the individualized goal plan.  (*Id.*, ¶ 7, PageID #505.)  Later, Fakhoury contributed to another individualized goal plan for the HPAC/CRUSH program at John Carroll University, based on the prior one she developed with Dr. Weisblat—this second individualized goal plan is the allegedly infringing work at issue in this case.  (*Id.*, ¶ 16, PageID #507; *see also* ECF No. 2-3, PageID #35–73.)

An individualized goal plan is not submitted with a grant application; it is used "once a program was funded, in place, and operational, to monitor the success of

8

members participating in the program." (ECF No. 30-2, ¶ 8, PageID #505.) To Fakhoury's knowledge, "at no point did any of [John Carroll University's] applications for AmeriCorps grant funding include the IGP as a part of grant submission." (*Id.*, ¶ 17, PageID #507.)

In her complaint, Dr. Weisblat claims that John Carroll University infringed the 2013 draft grant application (which she co-authored with Dr. Porfeli) by using some of the application's language in a single paragraph in the second individualized goal plan that Fakhoury created. (ECF No. 2, ¶ 24, PageID #5.) Ms. Fakhoury attests:

> The IGP describes the [John Carroll University] CRUSH Program generally; the responsibilities of members funded through the AmeriCorps program; timelines and aspirational goals under these timelines; performance measures; objectives and key components to those objectives; personal and academic goals of members; advice on resumes for members; and a cover letter, among other information.

(ECF No. 30-2, ¶ 17, PageID #507.) The paragraph at issue provides a general summary of the HPAC/CRUSH program's goals, John Carroll University's role in program's administration, and the expected outcomes for participants. (ECF No. 2-3, PageID #36.)

Dr. Weisblat identifies a series of sentences and sentence fragments that are common to the individualized goal plan's summary paragraph and the 2013 draft grant application:

- ". . . members of all ages and education backgrounds to create a rural . . ."

- "... volunteer health education corps that provides economically disadvantaged middle school through ..."

- "... youth with academic and career support through the utilization of a service-learning model, across Ohio.  The AmeriCorps members ..."

- "... will establish and deliver a Health Professions Affinity Community (HPAC) service learning based curriculum to students whose Ohio school districts lack the resources to provide academic and career skill support necessary for students to obtain a sustainable career in the health care industry, a growing Ohio career opportunity.  AmeriCorps members ..."

- "... will leverage a sufficient number of additional participants to sustain the program after the three-year funding period is over.  The project begins in August . . . ."

- "The project will focus on the Corporation for National & Community Service (CNCS) focus area of K-12 Success including improving opportunities for participating student academic and career success in ..."

- "... rural Ohio school districts while improving academic engagement and learning and increasing school attendance rates.  In addition, the expected outcome for AmeriCorps members ..."

- ". . . is to improve students' opportunities for career success, especially in the health care industry, by fostering college and career readiness, leadership skills, and self-efficacy."

(ECF No. 2-4, PageID #74–75.)

John Carroll University stopped using this individualized goal plan in 2021. (ECF No. 30-2, ¶ 18, PageID #507.)  Defendant calculates that approximately 195 words are common to the individualized goal plan's summary paragraph and the 2013 draft grant application.  (ECF No. 30, PageID #236 n.4.)   By its calculation, these words make up only 2.3% of the individualized goal plan and the remaining language of the document is different.  (*Id.*, PageID #236.)  Dr. Weisblat neither disputes these calculations nor identifies any other common language between the 2013 draft grant application, any of her other publications, or John Carroll University's other grant applications and materials.

## STATEMENT OF THE CASE

On May 23, 2022, Dr. Weisblat obtained a copyright registration for the 2013 grant application, registration number TXu 2-317-331.  (ECF No. 2-1, PageID #10.) Dr. Weisblat identifies herself as the sole author of the copyright, notwithstanding Dr. Porfeli's contributions (which she does not dispute) or the fact that NEOMED ultimately submitted the application for funding.  (*Id.*)

On November 15, 2022, Plaintiff sued John Carroll University for copyright infringement.  (ECF No. 2.)  After Plaintiff's counsel withdrew from representation the day after discovery closed (ECF No. 25, PageID #209–10), the Court set a

11

dispositive motion schedule and instructed her to respond to any motion filed by Defendant in accordance with Rule 56(d) if she believed additional discovery was necessary before she could substantively respond to Defendant's legal arguments (ECF No. 28, PageID #216).

On May 22, 2024, Defendant moved for summary judgment. (ECF No. 30, PageID #220.) On June 5, 2024, Plaintiff, represented by new counsel, requested a 90-day extension of time to complete discovery under Rule 56(d) and to respond to Defendant's summary judgment motion. (ECF No. 32, PageID #570.) Plaintiff identified several depositions of John Carroll University employees that she wished to complete and documentation that she wanted to obtain to support her claims. (*Id.*, PageID #572–74.) The Court denied Plaintiff's motion because it appeared that some of her proposed fact discovery was unrelated to the substantive elements of her copyright infringement claim or John Carroll University's defenses. (ECF No. 33, PageID #575–76.)

Accordingly, the Court directed Plaintiff to respond substantively to Defendant's first two grounds for summary judgment: (1) that the 2013 grant application is not copyrightable; and (2) that NEOMED is the owner of any copyright to the 2013 grant application under the work-for-hire doctrine. (*Id.* (citing ECF No. 30, PageID #220).) On July 8, 2024, Plaintiff opposed the motion for summary judgment. (ECF No. 34, PageID #578.) On July 22, 2024, Defendant filed a reply. (ECF No. 35, PageID #667.)

## EVIDENCE ON SUMMARY JUDGMENT

As a threshold matter, the Court addresses an evidentiary matter that Plaintiff raises.  In a footnote, Plaintiff objects to certain evidence Defendant uses to support its motion for summary judgment—namely, a declaration from one of John Carroll University's lawyers (ECF No. 30-1, PageID #254)—as an improper attempt to "authenticate evidence and present testimony" without "personal knowledge of the assertions she makes" (ECF No. 34, PageID #578 n.1).  Counsel authenticates several pieces of evidence:  screenshots of and links to government websites, Dr. Weisblat's State court complaint from a prior lawsuit and stipulation of its dismissal, a third-party deposition transcript, Plaintiff's responses to interrogatories, and two screenshots comparing the word count of the IGP and the 2013 grant application.

Rule 56(c)(2) governs objections to the admissibility of evidence offered to support a factual assertion in a motion for summary judgment.  Under this Rule, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Under Rule 56(c)(2), the Court will disregard any inadmissible portions of the evidence at issue.  In evaluating an objection under Rule 56(c)(2), the Court "should disregard [inadmissible evidence] rather than striking it from the record."  *Stephenson v. Family Sols. of Ohio, Inc.*, No. 1:18-cv-2017, 2021 WL 795551, at *5 (N.D. Ohio Mar. 2, 2021) (cleaned up).  "It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment."  *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (cleaned up).  Because the evidence at issue is either self-

13

authenticating, subject to judicial notice, or capable of being presented in an admissible form at trial, the Court will consider it on summary judgment and, accordingly, overrules Plaintiff's objections to them.

*First*, records from government websites are generally self-authenticating. An affidavit of a witness when viewed in combination with circumstantial indicia of authenticity (such as a URL, date, or other identifying information) will also serve to authenticate website screenshots. *Foreword Mag., Inc. v. OverDrive, Inc.*, No. 1:10-cv-1144, 2011 WL 5169384, at *3 (W.D. Mich. Oct. 31, 2011) (collecting cases). Here, counsel attaches a cover sheet that details when the screenshots were obtained, the URL for each website, and the title of each. (ECF No. 30-1, PageID #257; *id.*, PageID #263.) The Court is satisfied that the declaration and the other indicia of the reliability of these screenshots sufficiently authenticate the exhibits.

*Second*, court filings from other lawsuits are matters of public record and are appropriate for judicial notice. *See Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999). Accordingly, the Court takes judicial notice of the court filings as matters of public record but does not take judicial notice of the truth of any statement of fact contained in those documents. *See Embassy Realty Invs., LLC v. City of Cleveland*, 877 F. Supp. 2d 564, 571 (N.D. Ohio 2012).

*Third*, a deposition transcript is authenticated by identifying the deponent and including the cover sheet and court reporter's certificate. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009). The deposition offered includes a cover sheet,

identifies the deponent, and includes the court reporter's certificate; therefore, it is properly authenticated.  (ECF No. 30-1, PageID #317.)

*Fourth*, Plaintiff's response to interrogatories are self-authenticating statements of a party opponent.  *See Jones v. Wal-Mart Stores E., L.P.*, No. 2:19-cv-2747, 2021 WL 784145, at *5 (W.D. Tenn. Feb. 1, 2021).

*Fifth*, the Court can consider the screenshots documenting the word counts of the 2013 draft grant application and the individualized goal plan's summary paragraph as properly authenticated.  In Plaintiff's argument against consideration of these documents on summary judgment, she claims that counsel does not "actually hav[e] personal knowledge of the assertions she makes in the declaration."  (ECF No. 34, PageID #578.)  But the declaration includes the requisite language under 28 U.S.C. § 1746, and counsel identifies the source of these screenshots and word count calculations as "Microsoft Word, after converting it from PDF to Microsoft Word."  (ECF No. 30-1, ¶¶ 11–12, PageID #255.)  Moreover, Plaintiff does not dispute the accuracy of these calculations, the reliability of the method Defendant used to reach the calculations, or the reliability of the screenshots.  The Court finds that Defendant has properly authenticated these screenshots.  *Old West End Ass'n v. Buckeye Fed. Sav. & Loan*, 675 F. Supp. 1100, 1106 (N.D. Ohio 1987) (summary calculations authenticated through an affidavit under Rule 901(b)(1) where the proffering party indicates the source of the calculations).

Additionally, these screenshots would be admissible in this form at trial either as summaries under Rule 1006, as pedagogical devices under Rule 611(a) which

would be used to "aid the jury's examination of testimony or documents which are themselves admitted into evidence," or as a combination of summaries and pedagogical devices admitted "not in lieu of the evidence they summarize but in addition thereto." *United States v. Bray*, 139 F.3d 1104, 1111–12 (6th Cir. 1998) (emphasis omitted) (discussing ways to admit summary exhibits under Rules 611(a) and 1006).

## ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must then "set forth specific facts showing there is a genuine issue for trial." *Id.* (citing *Anderson*, 477 U.S. at 250).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

16

The Court, instead, determines "whether the evidence presents a sufficient disagreement to require submission to a jury" or whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. In doing so, the Court must view the evidence in the light most favorable to the non-moving party. *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587).

If a genuine dispute exists, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate. *Tokmenko*, 488 F. Supp 3d at 576 (citing *Anderson*, 477 U.S. at 250). If the evidence, however, "is merely colorable or is not significantly probative," summary judgment for the movant is proper. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48) (emphasis omitted).

"Just as a plaintiff may not rely on conclusory allegations to proceed past the pleading stage, so too a plaintiff may not rely on conclusory evidence to proceed past the summary-judgment stage." *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (cleaned up). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id.* (quoting *Alexander*, 576 F.3d at 560).

## I.      Idea for the HPAC/CRUSH Program

The Constitution gives power to Congress to grant authors exclusive copyrights over their works. U.S. Const. art. I, § 8, cl. 8. Copyright protection extends to

"original works of authorship fixed in any tangible medium of expression."  17 U.S.C. § 102(a).

At bottom, Plaintiff contends that John Carroll University's continued administration of the HPAC/CRUSH program is improper because that program was her idea.   On the record presented, that program stemmed from years of Dr. Weisblat's scholarship, research, effort, and collaboration with others.  However, "there is no labor theory of copyright."  *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 500 (6th Cir. 2022) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 359–60 (1991) (recognizing that "sweat of the brow" is not a basis for copyright protection and enforcement)).  In legal terms, this dispute boils down to whether Dr. Weisblat's idea for the HPAC/CRUSH program and her expression describing that program are subject to copyright protection.

Against this legal backdrop, the Court turns to Defendant's argument that neither the idea for the HPAC/CRUSH program nor what it characterizes as the *de minimis* language common to the 2013 draft grant application and the individualized goal plan are copyrightable.  "Although a copyright owner enjoys various exclusive rights . . . '[t]he mere fact that a work is copyrighted does not mean that every element of the work may be protected.'"  *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 666–67 (6th Cir. 2024) (quoting *Feist Publ'ns*, 499 U.S. at 348) (alteration in original).  "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained,

illustrated, or embodied in such work." 17 U.S.C. § 102(b).  Copyright protection extends only to the *expression* of an idea, not the idea itself or the facts underlying such expression. *Premier Dealer Servs., Inc. v. Allegiance Adm'rs, LLC*, 93 F.4th 985, 989–90 (6th Cir. 2024) (recognizing that an author cannot copyright principles of arithmetic or the physics of gravity but can copyright the problems and answer keys in a math or physics textbook); *see also Baker v. Selden*, 101 U.S. 99, 101–05 (1879) (explaining that, while a book describing a bookkeeping system is worthy of copyright protection, the underlying method described is not).

Whether known as the Health Professions Affinity Community program or the Corps for Rural and Urban Success and Health program, this program is a service-based youth educational program that delivers curriculum and academic and career support to students in underserved Ohio communities to encourage them to pursue careers in healthcare-related fields.  Simply stated, this idea at the heart of the HPAC/CRUSH program is an idea not subject to copyright.

Plaintiff repeatedly describes the HPAC/CRUSH program as an *idea* and claims that John Carroll University "re-branded" her "ideas and concepts" and copied the "context in which they presented the program" from her prior work. (*See* ECF No. 30-1, PageID #304, #305 & #309.)  But the *concept* of the HPAC/CRUSH program, or one like it, is not copyrightable.  Nor is the idea of applying for an AmeriCorps grant to fund such a program.  This is true even if Dr. Weisblat developed the idea for the program from her prior work through a creative process.  *See New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 389 F. Supp. 2d 527, 540–41

(S.D.N.Y. 2005) (holding that reports of settlement prices for oil and gas futures, even though achieved through a creative process, were not copyrightable); *MacTroung v. DeWine*, No. 2:22-cv-2908, 2022 WL 9818868, at *2–*3 (S.D. Ohio Oct. 17, 2022) (holding that an idea to create a network of private citizen officers who work together and detect criminal conspiracies, even though described in the plaintiff's copyrighted draft legislation, is not copyrightable).

Plaintiff's related contentions about John Carroll University's alleged research misconduct or unethical practices in continuing to administer the HPAC/CRUSH program and seek funding for it (*see* ECF No. 34, ¶ 23, PageID #594) have no bearing on the elements of copyright infringement for the simple reason that those arguments turn on the program at issue being an idea or concept. Therefore, even if John Carroll University's iteration of the HPAC/CRUSH program "is almost identical" to Plaintiff's *concept* of the program (*id.*, PageID #583), at bottom, that idea of the program itself is not copyrightable as a matter of law.

## II. Common Language

A copyright claim requires proof of (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *Feist Publ'ns*, 499 U.S. at 361. For the first element, Defendant argues in its reply that Plaintiff cannot assert ownership over the 2013 draft application because she concedes that it was a "derivative work" and that she does not maintain valid copyright registrations for the "original" works (book chapters and articles) that she used to develop it. (ECF No. 35, PageID #669–70.) A derivative work is one "based upon one or more preexisting works." 17 U.S.C. § 101. A copyright of a derivative work protects only the new

20

material added by the derivative author, not the matter derived or copied from the original work.  *See Stewart v. Abend*, 495 U.S. 207, 223 (1990).

This argument does not carry the day.  Aside from the fact that Defendant raises this argument for the first time in reply, Defendant fails to make any showing entitling it to a judgment as a matter of law on this theory.  Assuming that the 2013 draft application is a derivative work, Defendant provides no argument or evidence that the common language *at issue* in the summary paragraph of the individualized goal plan and the 2013 draft application was copied from the original works—as opposed to merely deriving from the general concepts discussed in the original works. Absent evidence to the contrary and construing all facts in favor of Plaintiff, as the Court must in the current procedural posture, the Court determines that the relevant portions of the 2013 draft grant application—that is, the approximately 195 words common between the 2013 draft grant application and the summary paragraph of the individualized goal plan—constitute new material eligible for copyright protection.

### II.A.  Originality

As for the second element of a copyright claim, whether the words copied are original such that they are entitled to copyright protection, *Feist Publ'ns*, 499 U.S. at 361, Defendant argues that the *de minimis* language common to the 2013 draft grant application and the summary paragraph of the individualized goal plan constitutes facts and general concepts that merge with the "idea" of the HPAC/CRUSH program and are, therefore, unoriginal and not copyrightable.  (ECF No. 30, PageID #237–38; ECF No. 35, PageID #671.)

The Supreme Court instructs that copyright protection is limited to the aspects of a work that "display the stamp of the author's originality." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985). An original expression is something that "possesses at least some minimal degree of creativity," even if the work is not novel. *Feist Publ'ns*, 499 U.S. at 345–46 (originality requires both "independent creation plus a modicum of creativity"). Although constitutionally mandated, the threshold showing of originality is not a demanding one. *Id.* at 345. "Authors fulfill originality's requirement of minimal creativity by making 'non-obvious choices' from 'among more than a few options,'" and the "author's choices must evince some 'inventiveness and imagination.'" *Premier Dealer Servs.,* 93 F.4th at 989 (cleaned up). Literal copying of *unoriginal* expression, however, is not actionable. Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 13.03(B)(3) (4th ed. 2024).

### II.B.  Merger

Originality's "modest threshold" comes with several important qualifications relevant here. *See Premier Dealer Servs.,* 93 F.4th at 989–90. First, "copyright protection does not extend to facts that already exist in the world, even if no one has discovered or published them." *Id.* at 989 (citing *Feist Publ'ns*, 499 U.S. at 347). Second, where there are only limited ways to express an idea, courts consider the idea and expression to "merge," and the expression of the idea becomes unprotected. *RJ Control Consultants*, 100 F.4th at 672–73; *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 387 F.3d 534, 538–39 (6th Cir. 2004).

In other words, "if unprotected elements are intertwined with any copyrightable elements, [then] the unprotected elements are stronger, and the expression will not be protected." *RJ Control Consultants*, 100 F.4th at 673. The rationale behind this doctrine is that "when there are only a few ways to express an idea, 'the first author to create a work would prevent others from expressing the underlying idea.'" *Id.* (quoting *Premier Dealer Servs.*, 93 F.4th at 990).

There is some disagreement about where the merger doctrine falls into the analysis: that is, whether it constitutes a bar to copyrightability or an affirmative defense to infringement. *See* Nimmer on Copyright, § 13.03(B)(3); *Lexmark Int'l*, 387 F.3d at 557 (Feikens, J., concurring in part and dissenting in part). Whatever the case, the doctrine filters out protectable expression (subject to infringement claims) from non-protectable expression (not subject to infringement claims)—with the focus falling on the basic principle that copyrights do not protect ideas but expression. *Kohus v. Mariol*, 328 F.3d 848, 855 (6th Cir. 2003). After filtering out non-protectable expression, any remaining protected expression must be more than *de minimis*—that is, it must be "more than a small insignificant portion of the plaintiff's work." *Neal Publ'ns v. F & W Publ'ns, Inc.*, 307 F. Supp. 2d 928, 931 (N.D. Ohio 2004) (citing *Warner Bros. Inc. v. American Broad. Cos., Inc.*, 720 F.2d 231, 242 (2d Cir. 1983)).

Copyright infringement presents either a mixed question of law and fact or a pure question of law. *ACT*, 46 F. 4th at 498 n.3 (noting that the court would perform *de novo* review on the issue of copyrightability in cases where the facts are largely undisputed); *see also Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339, 1353 n.3

23

(Fed. Cir. 2014) (describing a circuit split on the issue).  Here, the underlying relevant facts are not in dispute:  Defendant copied portions of Plaintiff's copyrighted work, and neither party disputes which portions of the work Defendant copied.  And the procedural posture confirms no material disputes of fact.  Accordingly, the only issue to resolve is whether the copied portions at issue are entitled to copyright protection as a matter of law.  *See Oracle America*, 750 F.3d at 1353 n.3; *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 480–81 (6th Cir. 2015).

### II.C.  Copyrightability

Defendant argues that, on its face, the common language at issue constitutes unoriginal "factual statements regarding the idea and concept for a program" and that Plaintiff "cannot claim exclusive copyright to the limited language that can be used to describe the facts surrounding" the HPAC/CRUSH program.  (ECF No. 30, PageID #238 (emphasis omitted).)  Plaintiff argues that Defendant "did nothing to create the original thoughts of this document" and, based on her declaration and complaint, the entirety of the 2013 draft application is "original."  (ECF No. 34, PageID #587.)  In support of these assertions, Plaintiff relies on sentence fragments from the 2013 draft grant application and identifies them as "unique expressions." (ECF No. 34; ¶¶ 13–22, PageID #593–94; *id.*, PageID #583–85.)

As a point of clarification, the Court's copyright infringement inquiry is limited to the identified portions of the 2013 draft grant application that Defendant copied in the summary paragraph of the individualized goal plan, not to the entirety of the work.  *See Feist Publ'ns*, 499 U.S. at 361.  Plaintiff identifies *only* the 195 words in the summary paragraph as the source of infringement—not any other document or

subsequent grant application. (*See* ECF No. 2, ¶¶ 24 & 25, PageID #5; ECF No. 2-3, PageID #35–73; ECF No. 2-4, PageID #74–75.) In her opposition, Plaintiff fails to provide meaningful analysis of the common language between the 2013 draft grant application and the summary paragraph. Moreover, Plaintiff's conclusory declaration purporting to establish that the 2013 draft grant application contained original expression is insufficient to defeat Defendant's summary judgment motion. *See Viet*, 951 F.3d at 823.

Examining the copied sentences and sentence fragments demonstrates that John Carroll University largely copied unprotected factual information from the 2013 draft grant application. The copied information states that the grant funds AmeriCorps members in their efforts to establish a youth educational program for under-resourced Ohio school districts; that some Ohio school districts lack resources to provide opportunities for students to launch a career in healthcare; that the healthcare industry is a growing career opportunity in Ohio; that the project begins in August; that the focus of the program is on improving opportunities for students' academic and career success; that the program will improve academic opportunities and increase school attendance rates; that additional participants will help run the program after the funding period ends; and that AmeriCorps members who deliver the programming should expect to improve students' healthcare industry career opportunities. (*See* ECF No. 2-4, PageID #75.)

On the "spectrum from more expression-like to more idea-like," *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 319 (6th Cir. 2004),

25

the common language between the summary paragraph of the individualized goal plan and the 2013 draft grant application is, as a matter of law, more idea-like.  Even at its most abstract, the copied portions of the 2013 draft grant application reflect a very narrow topic:  a description of the background, concept, structure, and goals of a specific federally funded youth educational program.  But the expression at issue consists largely of routine statements.

To the extent the phrasing at issue evinces creativity and originality—for example, naming the program the "Health Profession Affinity Community" and describing the AmeriCorps members' role in "fostering college and career readiness, leadership skills, and self-efficacy"—the comparatively limited ways to express the program's background, concept, goals, and structure overcomes that originality, subjecting the expression to merger.  *See RJ Control Consultants*, 100 F.4th at 672–73.  Under the law, then, Defendant's actions constitute either copying of unoriginal fact or expression so intertwined with the underlying idea of the program that the unprotected elements of the language predominate.  In either case, there can be no copyright protection.

After filtering out the unoriginal statements of fact and merged expression, if any expression is left, Plaintiff has not identified any disputes of material fact to show that Defendant's copying of *protected* expression was more than *de minimis*.  (ECF No. 30, PageID #238; ECF No. 35; PageID #671–72.)  Actionable copyright infringement requires more than *de minimis* copying.  *Neal Publ'ns*, 307 F. Supp. 2d at 931.  Construing the record in favor of Plaintiff, the copying of any copyrightable

26

material at issue does not involve anything more than a small and insignificant portion of the work.

For these reasons, Plaintiff's copyright infringement claim fails as a matter of law.  To hold otherwise would allow Plaintiff to monopolize the idea of this specific type of youth educational program and stifle the ability of John Carroll University or others to establish and seek AmeriCorps funding for this type of program.

## CONCLUSION

For the foregoing reasons, Plaintiff's copyright infringement claim fails as a matter of law.  Accordingly, the Court **GRANTS** Defendant's motion for summary judgment and has no need to consider Defendant's argument that NEOMED owns any copyright for the 2013 draft grant application under the work-for-hire doctrine.

**SO ORDERED.**

Dated:  September 12, 2024

_____

J. Philip Calabrese
United States District Judge
Northern District of Ohio